**Joseph F. MOORE, Appellant,**

v.

**WARWICK PUBLIC SCHOOL DISTRICT NO. 29, a public corporation, Appellee.**

No. 85–5116.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1986.

Decided June 13, 1986.

Daniel J. Chapman, Bismarck, N.D., for appellant.

Douglas R. Herman, Fargo, N.D., for appellee.

Before HEANEY and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

BOWMAN, Circuit Judge.

Plaintiff Joseph Moore appeals from the District Court's dismissal of both counts of his civil rights complaint. Moore was discharged during the term of his one-year contract as superintendent of the Warwick Public School District. The first count of his complaint under 42 U.S.C. § 1983 alleged procedural and substantive due process violations. The second count alleged handicap discrimination on account of blindness in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The District Court entered pre-trial judgment in favor of defendant on both counts and dismissed the complaint. We reverse and remand for further proceedings consistent with this opinion.

## I.

Joseph Moore was superintendent of the Warwick Public School District from mid-1978 until his discharge on December 22, 1982. At the time of his discharge, Moore had a written one-year contract with the school district effective through July 1, 1983. Moore's eyesight had begun to deteriorate because of glaucoma to the point that at the time of his discharge he was at least partially, if not totally, blind. In early November 1982 Moore was asked by the school board to resign. He refused to do so. On December 14, 1982, the school board voted unanimously to discharge Moore effective December 22, 1982.

In May 1983 Moore filed this suit against the school district. In the first count under section 1983, Moore alleged that he had been deprived of a property right without due process of law and that the school board acted arbitrarily, capriciously, and in bad faith in discharging him. The second count alleged that the school board discriminated against Moore because of his handicap (*i.e.*, his blindness), in violation of section 504 of the Rehabilitation Act of 1973.

Defendant filed its answer and moved to strike the demand for a jury trial, to strike the prayer for compensatory damages un-

der the section 504 claim, and to dismiss the section 1983 claim on the ground that the comprehensive remedial scheme enacted by Congress under section 504 was the exclusive remedy for a violation thereunder, thereby precluding an action under section 1983. District Judge Bruce M. Van Sickle denied defendant's motions in November 1983.

District Judge Paul Benson thereafter assumed control of this action, and on September 20, 1984 entered *sua sponte* an order dismissing the section 504 claim "for failure to plead a basis for subject matter jurisdiction by the federal court." Appendix at 31. The court cited as the reason for the dismissal Moore's failure to amend the complaint as suggested by District Judge Van Sickle in his November 1983 order. The court also dismissed *sua sponte* the section 1983 claims on March 5, 1985 after an evidentiary hearing. The purpose of the hearing was "to determine whether, as a matter of law, a jury issue is present regarding the alleged violations of procedural and substantive due process." App. at 53. Applying the analysis adopted in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the court held that North Dakota law provided an adequate post-deprivation remedy in the form of a common law action for breach of contract, and that Moore therefore had not been deprived of procedural due process. App. at 55–57. As to the substantive due process claim, the court noted that a plaintiff bears the burden of showing that the school board acted arbitrarily and capriciously. App. at 57 (citing *Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam)). Citing evidence of complaints to the school board regarding various school problems and Moore's performance, the court held that the school board did not act arbitrarily and that therefore there was no substantive due process violation. App. at 58.[1]

---

1. We note that the District Court did not set

forth the final judgment in a separate doc-

## II.

In his September 20, 1984 order dismissing the section 504 claim in count II of the complaint, Judge Benson relied entirely upon Judge Van Sickle's November 1983 order to justify dismissal of the claim for lack of federal subject matter jurisdiction. We believe Judge Benson erred in his interpretation of Judge Van Sickle's order and in his dismissal of the section 504 claim.

Much of the confusion in regard to the section 504 claim appears to have been generated originally with defendant's motion to dismiss the section 1983 claim in count I of the complaint. In that motion, defendant asserted that Moore's claim under section 1983 was foreclosed because Congress had provided a sufficiently comprehensive remedy for handicap discrimination under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *See Maine v. Thiboutot*, 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981).[2] Defendant obviously read Moore's section 1983 claim as being predicated only on a violation of section 504. That it was not, however, is apparent from a cursory reading of the complaint, as

Judge Van Sickle correctly noted. Judge Van Sickle states unequivocally in his November 1983 order that Moore's section 1983 claim is based on alleged violations of due process. App. at 24, 30.

After noting that fact, Judge Van Sickle proceeded to decide, under the *Thiboutot-National Sea Clammers* analysis, whether the section 1983 claim could be predicated on a violation of section 504 (in addition to the alleged due process violations). App. at 24–30. After holding that the remedial scheme under section 504 was not sufficiently comprehensive to foreclose a section 1983 claim based on a violation of section 504, Judge Van Sickle correctly suggested that Moore would have to amend count I of his complaint if he wished to base his section 1983 claim on a violation of section 504. App. at 24, 30.[3] The reason for this suggestion was obvious—Moore had never pled a violation of section 504 as a basis for his section 1983 claim. Judge Van Sickle, however, made no finding as to the sufficiency of the allegations under count II of the complaint—a claim directly under section 504.

In his September 1984 order dismissing the section 504 claim, Judge Benson misconstrued Judge Van Sickle's suggestion to

ument—distinct from its two memorandum opinions and orders dismissing both counts of the complaint—as required under Fed.R.Civ.P. 58. Rule 58 states that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Although the "separate-document" requirement in Rule 58 is not jurisdictional and may be waived by the parties, *see Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), we previously have stressed to the district judges that the rule is mandatory and is more than a mere formality in that it plays an important role in making a judgment "final" for purposes of determining when the time for filing post-judgment motions or notice of appeal starts to run. *See Composite Technology, Inc. v. Underwriters at Lloyd's*, 762 F.2d 708, 709–10 n.3 (8th Cir.1985); *see also* Fed.R.Civ.P. 58 advisory committee note, 1963 amendment.

In this case the parties clearly can be deemed to have waived the separate-document requirement since neither party has raised the question of noncompliance with Rule 58. Moreover, it is apparent from the record that the District Court

intended the memorandum opinions and orders from which the appeal was taken to be its final decision. Therefore, we properly can assume appellate jurisdiction under 28 U.S.C. § 1291.

**2.** Defendant's argument was based on an exception to the general rule announced in *Thiboutot* that a section 1983 claim could be predicated solely on a violation of a federal statute. 448 U.S. at 4, 101 S.Ct. at 2618. In *National Sea Clammers* the Court held that a section 1983 claim is foreclosed when there is a sufficiently comprehensive remedial and enforcement scheme in the underlying federal statute to demonstrate congressional intent to preclude a suit under section 1983. 453 U.S. at 19–20, 101 S.Ct. at 2625–26.

**3.** There arguably would be tactical advantages in bringing a section 504 claim under section 1983 rather than bringing a direct action under section 504. The availability of certain "benefits" under section 1983, such as a jury trial, apparently was the reason Judge Van Sickle proceeded to reach the issue. App. at 24.

Moore to amend count I of the complaint. As explained above, Judge Van Sickle's suggestion to amend the complaint referred only to the section 1983 claim under count I and in no way affected the section 504 claim alleged in count II. At no time was the section 504 claim in count II of the complaint discussed by Judge Van Sickle. Judge Benson, however, cited Moore's failure to amend his section 504 claim in count II as justifying the dismissal of that claim for lack of federal subject matter jurisdiction. App. at 31. In doing so, Judge Benson erred.

Count II of Moore's complaint properly states a cause of action directly under section 504 of the Rehabilitation Act of 1973. In *Miener v. State of Missouri*, 673 F.2d 969, 973–74, 977–79 (8th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982), this Court held that individual plaintiffs have an implied private cause of action for damages under section 504. Because the allegations in count II of the complaint state a claim directly under section 504, thus invoking the federal question jurisdiction of the District Court, *see* 28 U.S.C. § 1331, the court erred in dismissing that count.

### III.

In count I of his complaint under section 1983, Moore alleged that he was deprived of property without due process of law and that the school district's action in discharging him was arbitrary, capricious, and in bad faith. Judge Benson construed the complaint as alleging violations of both procedural and substantive due process. After holding an evidentiary hearing to determine whether there existed a jury issue as to either claim, Judge Benson entered *sua sponte* an order dismissing both claims. At the time of the dismissal there was no motion for summary judgment pending before the District Court. We believe the court erred in dismissing the due process claims under section 1983 in count I of the complaint.

### A.

Though a Rule 12(b)(6) motion to dismiss may be treated as a motion for summary judgment under Rule 56 when matters outside the pleadings are considered, *see* Fed.R.Civ.P. 12(b), that was not the case here. Defendant's motion to dismiss had been denied and finally disposed of by Judge Van Sickle. Thus, there was no pending motion of any kind before the court at the time Judge Benson acted. The *sua sponte* dismissal of the procedural and substantive due process claims amounted in essence to a grant of summary judgment in favor of defendant. Under the law of this Circuit, that clearly was not proper in the absence of a motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure contemplates the entry of summary judgment only after the filing of a motion therefor by one of the parties. Although the district court may assist through pre-trial proceedings in narrowing the issues, the court cannot raise an issue *sua sponte* and then proceed to decide it without a motion for summary judgment. Although other circuits have permitted a district court to enter summary judgment *sua sponte*, this Court has taken a position of strict compliance with Rule 56 and its requirement of a motion for summary judgment before the same may be granted. *See, e.g., Williams v. City of St. Louis*, 783 F.2d 114, 116 (8th Cir.1986) (citing other cases). The fact that the parties may have had adequate notice and an opportunity to respond to the issues raised and decided in the summary judgment order is irrelevant. *Id.* Because our cases demand strict compliance with Rule 56, the District Court's *sua sponte* grant of summary judgment was improper. For this reason alone, we must reverse the court's dismissal of the section 1983 claims. However, to provide guidance to the District Court and to the parties on remand, we deem it appropriate to set forth the proper framework for analysis of the procedural and substantive due process claims.

## B.

The District Court, in analyzing the procedural due process claim, correctly held that Moore had a protected "property" right in his continued employment as superintendent through July 1, 1983 by virtue of his one-year contract with the school district. App. at 55. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Okeson v. Tolley School District No. 25*, 570 F.Supp. 408, 410 (D.N.D.1983) ("[T]he termination of an existing contractual relationship is plainly considered a property interest ... for due process purposes.") With that determination, the inquiry then focuses on what process was due Moore before the school board could discharge him.

The District Court, in its March 5, 1985 order, held that Moore, as superintendent of the school district, was not entitled to the procedural safeguards applicable to "teachers" under state law. *See* N.D.Cent. Code § 15–47–38; *Storbeck v. Oriska School District No. 13*, 277 N.W.2d 130, 131–33 (N.D.1979) (holding that a superintendent who also teaches classes is a superintendent, not a "teacher," and therefore is not entitled to the procedural safeguards under § 15–47–38). The court also noted that the state statute requiring procedural and substantive safeguards in the discharge of superintendents was enacted in 1983 after Moore already had been discharged. *See* N.D.Cent.Code § 15–47–38.1 (Supp.1985). Thus, the court held, state law did not provide Moore with any basis

for a procedural due process claim. App. at 55–56.

The District Court then proceeded to analyze Moore's procedural due process claim under the analysis adopted in *Parratt v. Taylor*, 451 U.S. 527, 536–44, 101 S.Ct. 1908, 1913–17, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393 (1984). The court reasoned that Moore could be fully compensated in a state common law action for breach of contract; thus, he had not been deprived of procedural due process since state law provided an adequate post-deprivation remedy. App. at 56–57.

We may assume *arguendo*, without deciding the issue, that the District Court's interpretation of state law is correct.[4] We are troubled, however, by the court's almost automatic application of the *Parratt-Hudson* analysis to the procedural due process claim without first determining whether Moore was entitled to a pre-termination hearing of some kind.

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of ... property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). The Supreme Court consistently has held that, absent the necessity of quick action by the State, "some kind of hearing" is required before an individual is finally deprived of a property interest. *See, e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("This principle

---

**4.** Because of the procedural posture of this case, we, of course, express no opinion on that issue. For purposes of providing guidance to the parties and to the court on remand, it is sufficient to assume the correctness of the District Court's interpretation of state law. The parties remain free, however, to address the state law issue on remand.

We wish to point out also that a determination that Moore had no procedural due process rights under *state* law does not end the inquiry. Defendant seems to suggest in its brief that

Moore's property right is defined by, and conditioned on, the state legislature's choice of procedures for its deprivation. Brief for Appellee at 6–7. That argument was expressly rejected by the United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985), in which the Court stated that "the 'bitter with the sweet' approach misconceives the constitutional guarantee." *Id.* at 1493. Minimum procedural requirements are a matter of federal constitutional law, not state legislative grace.

requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."); *see generally* Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L. Rev. 1267 (1975). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Due process is a flexible concept, however, and calls only for such procedural protection as the particular situation demands.

Resolution of the issues of what process is due and whether a particular procedure is constitutionally sufficient requires analysis of the governmental and private (or individual) interests that are affected. *Id.* at 334, 96 S.Ct. at 902. As the Court stated in *Mathews,*

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

This three-factor balancing test has been the standard under which procedural due process claims have been scrutinized. The ultimate result in most cases has been the requirement of some kind of pre-deprivation hearing. In general, "something less" than a full evidentiary hearing has been held sufficient prior to adverse administrative action. *Loudermill,* 105 S.Ct. at 1495; *see Riggins v. Board of Regents,* 790 F.2d 707, (8th Cir.1986). In only one case, *Gold-*

*berg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has the Court required a full adversarial evidentiary hearing prior to adverse governmental action.[5]

The Supreme Court, however, has recognized only two narrow exceptions to the general rule requiring a pre-deprivation hearing. The first exception applies in those situations requiring quick action by the State when there is a compelling or overriding state interest in a summary adjudication. *See, e.g., Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (upholding state statute mandating pre-hearing suspension of a driver's license for refusing to take a breath analysis test upon arrest for operating a motor vehicle while under the influence of alcohol); *North American Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (upholding State's right to seize and destroy contaminated food without a prior hearing). In such a case, the Court has emphasized the availability of a prompt post-deprivation administrative hearing to challenge the governmental action in finding that due process was satisfied. *Compare, e.g., Mackey,* 443 U.S. at 12, 99 S.Ct. at 2618 (post-suspension hearing was available *immediately* upon request) *with Barry v. Barchi,* 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979) (state statute as applied was deficient since it did not assure a prompt post-suspension hearing that could be concluded without appreciable delay). *See also Smith v. Sorensen,* 748 F.2d 427, 435–36 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985).

The second exception, the *Parratt-Hudson* analysis, applies only in those situations where the deprivation is the result of a "random and unauthorized" act by a state employee, not the result of some established state procedure, *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–

---

**5.** In *Loudermill,* for example, the Court held that a tenured public employee was "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 105 S.Ct. at 1495. Without this pre-termination opportunity to respond, the post-termination administrative procedures provided by state statute would not have satisfied due process. *Id.* at 1496.

36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982), and it is "not only impracticable, but impossible" for the State to provide a meaningful hearing before the deprivation. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. In such a case, an adequate post-deprivation remedy under state law will satisfy procedural due process. *Id.* at 537–44, 101 S.Ct. at 1914–17; *Hudson,* 104 S.Ct. at 3202–04.[6]

As the Court noted in *Parratt,* its prior decisions recognize that

> either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirement of procedural due process.

451 U.S. at 539, 101 S.Ct. at 1915.

The point to be made is that as a general rule there must be some kind of hearing *before* the government may deprive an individual of a property interest. Only in the two narrow situations described above can the government dispense with a hearing prior to the adverse governmental action. Under the analysis used by the District Court and urged on appeal by defendant, the exception would swallow up the rule.

█ In this case, unless defendant can show that the school board was faced with an exigent situation requiring quick action on its part, or that the school board's action was "random and unauthorized" and that it was "not only impracticable, but impossible" to provide a meaningful hearing before discharging Moore, he was entitled to some kind of pre-termination process. Because of the procedural posture of this case, we go no further than to set forth the analytical framework by which to determine what process was due Moore. Should the District Court determine under the above analysis that some type of pre-termination hearing was required, the specifics of that hearing are to be determined in the first instance by the District Court under the *Mathews v. Eldridge* three-factor balancing test. It would then be necessary to determine from the evidence whether Moore in fact received the process that was due him.

### C.

As noted above, the District Court dismissed *sua sponte* Moore's substantive due process claim on the merits. After citing evidence of complaints to the school board and problems within the school district, the court concluded that the school board did not act arbitrarily or capriciously in discharging Moore, and thus did not violate his substantive due process rights. App. at 57–58. Implicitly, the District Court found that Moore had stated a cognizable claim, but proceeded to rule against him on the merits of the claim. Because the District Court's *sua sponte* grant of summary judgment in favor of defendant was improper, *see supra* Part III.A., at 7, we must reverse on that ground unless, taking the facts as alleged to be true, the complaint fails to state a cognizable substantive due process claim. *See Scivally v. Time Insurance Co.,* 724 F.2d 101, 103 (10th Cir.1983) (appellate court may affirm district court decision if record discloses any ground that supports it, though not one relied upon by district court).

█ The concept of substantive due process has been alluded to by this Court in prior decisions. As yet, there is no clear consensus whether this Circuit will recognize a substantive due process right to be free from arbitrary and capricious state action. *See, e.g., Harrison v. Springdale Water & Sewer Commission,* 780 F.2d

---

**6.** This Court recently stated that *Parratt* applies "only if a determination has been made that a predeprivation hearing is not required." *Little-* field *v. City of Afton,* 785 F.2d 596, 600 (8th Cir.1986) (setting forth analysis for procedural due process claims).

1422, 1428 n.10 (8th Cir.1986); *Edwards v. Arkansas Power & Light Co.,* 683 F.2d 1149, 1155–56, 1159–60 (8th Cir.1982); *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1200–03 (8th Cir. 1974). Although a panel of this Court recently recognized a substantive due process right in *Littlefield v. City of Afton,* 785 F.2d 596, 603–07 (8th Cir.1986) (allegations that city arbitrarily and capriciously denied building permit and imposed an unconstitutional condition on the granting of the permit to an otherwise qualified applicant stated substantive due process claim), that part of the decision recently was reconsidered by this Court *en banc* in an unrelated case. *Lemke v. Cass County,* No. 85–1139 (8th Cir. *en banc* argued May 15, 1986). Therefore, until the opinion in *Lemke* is issued, the law is this Circuit remains unclear.

However, we are not without some guidance in this area. In a case also dealing with the actions of a school board, the Supreme Court implicitly, if not necessarily, recognized a substantive due process right to be free from arbitrary and capricious state action. In *Harrah Independent School District v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam), the school board adopted a new continuing education requirement (to be applied prospectively only) that teachers holding only a bachelor's degree must earn five semester hours of college credit every three years. The sanction for noncompliance was nonrenewal of the teacher's contract. Martin, a tenured teacher, refused to enroll in the necessary courses. The school board found her persistent noncompliance with the continuing education requirement to constitute "wilful neglect of duty" (the statutory standard required to justify nonrenewal of a teacher's contract) and voted not to renew her contract for the following school year. *Id.* at 195–96, 99 S.Ct. at 1062–63.

The Court began its brief analysis by stating that "the Due Process Clause of the Fourteenth Amendment not only ac-

cords procedural safeguards to protected interests, but likewise protects substantive aspects of liberty against impermissible governmental restrictions." *Id.* at 197, 99 S.Ct. at 1063. In addressing the merits of the substantive due process claim, the Court stated that "[t]he School Board's rule is endowed with a presumption of legislative validity, and the burden is on [the teacher] to show that there is no rational connection between the Board's action and its conceded interest in providing its students with competent, well-trained teachers." *Id.* at 198, 99 S.Ct. at 1064. After reviewing the circumstances giving rise to the school board's adoption of the continuing education requirement, the Court held that

> [s]uch a course of conduct on the part of a school board responsible for the public education of students within its jurisdiction, and employing teachers to perform the principal portion of that task, can scarcely be described as arbitrary. [Martin's] claim of a denial of substantive due process under these circumstances is wholly untenable.

*Id.* at 199, 99 S.Ct. at 1064.

In formulating a rational-basis standard and in reaching the merits of the claim, it seems to us that the Court necessarily recognized a substantive due process right to be free from arbitrary and capricious state action in this particular context. In our case, Moore is alleging arbitrary and capricious action by the school board in discharging him. We fail to see how these two cases can be distinguished insofar as the bare allegations in the complaint are concerned. Because we are reviewing the complaint to determine only whether it states an actionable substantive due process claim, we express no opinion as to the merits of the claim. We hold only that, under the authority of *Harrah Independent School District v. Martin,* the complaint sufficiently states a cognizable substantive due process claim. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99,

101–02, 2 L.Ed.2d 80 (1957). We therefore cannot affirm the District Court's dismissal of the substantive due process claim on the ground that the complaint fails to state a claim upon which relief can be granted. Thus, the District Court's *sua sponte* grant of summary judgment was reversible error with respect to that claim.

## IV.

We hold that the District Court erred in dismissing the section 504 claim in count II of the complaint. Individual plaintiffs have a private cause of action for damages directly under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. We hold also that the District Court erred in granting *sua sponte* summary judgment in favor of defendant on the procedural and substantive due process claims under section 1983 in count I of the complaint. We remand the case to the District Court for further proceedings consistent with this opinion.[7]

Reversed and remanded.

---

[7]. We feel compelled to address an issue raised by the District Court in its March 5, 1985 order. In that order the court stated that the evidentiary hearing on the due process claims was held pursuant to Rule 11 of the Federal Rules of Civil Procedure "to determine whether Plaintiff's attorney signed the complaint ... with knowledge, information, and belief, formed after reasonable inquiry, that it was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." App. at 53. The court, however, ultimately dismissed those claims not on the basis of bad faith under Rule 11, but on the basis of *Parratt* and on the merits of the substantive due process claim. The cases cited in this opinion support plaintiff's legal theories insofar as the allegations in the complaint are concerned. Because of the procedural posture of the case, we, of course, have no indication whether the complaint is "well grounded in fact." The merits of those claims remain to be determined. At this point, however, to the extent that the District Court implied otherwise in its order, there is no basis in the record or in the law to suggest that counsel for plaintiff violated the good faith requirement in Rule 11.